## SHERMAN *vs.* THE WESTERN TRANSPORTATION COMPANY.

Negligence consists in omitting to do what a person ought to do. It is of the essence of negligence that the party charged should have knowledge that there was a duty for him to perform; or he must have omitted to inform himself as to what his duty was, in a given case.

In a great number of cases, knowledge is presumed, and the party will not be permitted to prove that he had not knowledge of his duty.

When the law imposes a duty on a man, it presumes that he knew of it; and it will not permit him to prove that he did not.

When the specific duty is not imposed by either the statute or the common law, the party alleging negligence must show that the accused was cognizant of the duty he is charged with having neglected.

It is not necessary that this should be established by direct evidence; it may be, and almost universally is, inferred from the nature of the duty, or the facts and circumstances of the case.

Sherman *v.* Western Transportation Company.

Although there be no statute requiring persons navigating boats on the canals to have the bottoms of such boats so made as to permit tow-lines to pass under them without obstruction, yet the duty is obvious; and an individual omitting to keep the bottom of his boat in the condition required to permit the free passage of the tow-line of another boat under her, is responsible for whatever damages naturally and necessarily flow from his neglect.

But to render him liable, in such a case, it must be shown that he knew of the defect in his boat a sufficient length of time before the injury caused by it occurred, to have enabled him to avoid the injury; or the defect must have continued so long as to satisfy a court or jury that if he had paid proper attention to his boat he must have discovered it.

In the absence of any proof showing when or how the defect in the bottom of the boat, causing the injury, originated, or how long it had existed, the court will not presume that such boat was known to the owner, lessee or master to be in a condition not to allow the free passage of towing-lines, for such a length of time as to have made it his duty to put it in proper order. Negligence is never presumed.

APPEAL from a judgment entered upon the report of a referee.

The complaint alleged that the defendant was a corporation, duly chartered under the laws of this State, having its office at Buffalo, whose business is the transportation of merchandise and property on the internal waters of this State; that in the boating season on the Erie canal, in the year 1859, said defendant owned and navigated the said Erie canal with the canal boat *Rose Bud;* that said canal boat *Rose Bud* had a catch on the under side thereof, which would catch the towing-lines of boats with which said boat *Rose Bud* met, which fact was well known to said defendant, and it was chargeable with knowledge thereof; that while said defendant was so navigating said Erie canal in the boating season of 1859, and in the vicinity of Lyons, its boat met the plaintiff's canal boat *Sarah,* with which said plaintiff was lawfully navigating said Erie canal in the transportation of merchandise and property with a team of horses; that the tow-line of the plaintiff's said canal boat *Sarah* was caught by said catch on the bottom of the defendant's said canal boat *Rose Bud,* without any fault of the plaintiff, and by means thereof the

team of horses of the plaintiff were drawn into said canal, and one of said horses, worth the sum of $75, was thereupon drowned, and the other of said horses was thereby greatly hurt and injured, to at least $25; that by means thereof, the plaintiff was delayed and injured in his said business to the amount of $25; and he demanded judgment against the defendant for the sum of $125, besides costs.

The defendant, by its answer, denied each and every allegation in the complaint contained. And for a further answer alleged that any damage which the plaintiff may have sustained was so sustained without any fault or negligence of the defendant or its servants, and solely by the fault and negligence of the plaintiff, and not otherwise.

The action was referred to a referee, who found from the evidence adduced before him, that, while the parties were navigating the Erie canal with their boats, as stated in the complaint, and while their respective boats were passing each other, the tow-line of the plaintiff's boat *Sarah* caught underneath the defendant's boat *Rose Bud*, without any fault on the part of the plaintiff, and in consequence thereof the horses of the said plaintiff were drawn into the canal, and one of them was drowned and the other injured thereby; that the tow-line of the said plaintiff caught on some part of the bottom of the defendant's boat as the boats were passing; and that the said defendant was careless and negligent in not having the bottom of the boat *Rose Bud* in such a condition at all times while navigating the canal as to permit tow-lines to pass underneath it without catching; and that the injury in question occurred in consequence of such negligence. The referee found the value of the horse drowned at the time he was drawn into the canal, as aforesaid, to be $65, and the damage to the other horse to be $25—in all, $90; for which sum, with interest, he reported in favor of the

plaintiff. And judgment being entered upon the report, the defendant appealed.

*John Hubbell,* for the appellant.

I. The referee erred in refusing to nonsuit the plaintiff. The proof not only failed to establish the cause of action set forth in the complaint, but did not tend to prove any cause of action whatever. 1. There was no proof, or pretense of proof, showing negligence in the conduct or management of the defendant's boat. 2. There was no proof tending to show that the boat *Rose Bud* was not in good and perfect condition at the time of the accident, or at any other time; nor is there any pretense that the defendant had any notice, knowledge or intimation that the boat in question was defective. The complaint, in this respect, which alleges that "it had a catch on the under side thereof, which was well known to the defendant, and they were chargeable with knowledge thereof," was wholly unsupported by the proof. 3. Negligence is not to be presumed or inferred. Like any other material fact it is to be established affirmatively by the party claiming to recover by reason thereof.

II. The accident in this case was caused and produced by the plaintiff himself in taking the wrong side of the canal. The boats were going in opposite directions, and the plaintiff should have taken the inside, or tow-path side, in passing; but he requested the captain of the defendant's boat to take the inside and give him the outside, to which the captain of the *Rose Bud* assented; and in thus attempting to pass each other, (both boats being where they ought not to have been,) the line of the plaintiff became fastened under the defendant's boat. If each boat had kept its own side the accident could not have happened; the plaintiff's line could not have passed under the defendant's boat at all; but the defendant's line would have passed under the plaintiff's boat in the ordinary

manner, and an accident of this character would have been impossible. The two captains undertook to experiment, and the result was as might have been expected. The defendant ought not, it is submitted, to be made responsible for this act of its agent, done, as it was, at the request, and for the accommodation of the plaintiff, and in violation of his known duty to his employer, who is the defendant in this action.

III. The report of the referee is palpably erroneous, both in the finding of facts and his conclusions of law. Without finding, as matter of fact, that the defendant's boat was not in good condition in all respects, he finds, in terms, that " the defendant was careless and negligent in not having the bottom of the *Rose Bud* in such condition, at all times, as to permit tow lines to pass under it without catching; and that the injury in question occurred in consequence of such negligence." If the referee is to be understood as finding that the bottom of the *Rose Bud* was not in good condition, etc., then we submit that there is not a particle of proof to sustain the report in this respect; and so far from the injury in question having occurred in consequence of the condition of the boat, that the proof shows the exact contrary, and that the accident was occasioned by the boats taking the wrong side. The legal proposition involved in this sentence cannot be sustained. We are not chargeable with negligence where there has been no omission, or neglect of duty in point of fact; and even if we concede that the line of the plaintiff caught in the bottom of the *Rose Bud*, it does not follow that the defect, if any there was, was known to the defendant, or that it had been of such long standing as that the law will imply knowledge on its part. For aught that appears, this defect had occurred but the moment before; or might have been, and probably was, caused by the plaintiff's line drawing up against the bottom of the boat.

*Pomeroy & Southworth,* for the respondent.

I. There was no point raised on motion for nonsuit, and there is no point raised by the exceptions, except that the defendants were bound, at all times, to have the bottom of their boats, with which they navigated the canals, in such a condition as not to be dangerous to boats they should meet. This finding of the referee, was right; else every boat, having a catch, must have at least one victim with impunity.. A very high degree of vigilance is demanded by the requirements of ordinary care, in this case. (2 *Kern.* 425, *marg. notes,* 429, 430, *of text.*) Where the consequences of negligence will probably be serious injury to others, and where the means of avoiding the infliction of injury upon others are completely within the party's power, ordinary care requires almost the utmost degree of human vigilance and foresight. (2 *Kern.* 429, 430. 21 *Wend.* 407.) Within the cases above cited, it was not necessary to show that the defendants knew of the existence of the catch; they were bound to provide against it. Besides, the presumption is that the defendant did know it. It was a catch which received a tow-line so far that it was necessary to use a team in drawing it out. The boat was navigating the Erie canal, and could not possibly meet a boat without catching the tow-line, more or less.

II. The finding complained of is, "that the defendant was careless and negligent in not having the bottom of the boat *Rose Bud* in such a condition at all times while navigating the canal as to permit tow-lines to pass underneath, without catching, and that the injury in question occurred in consequence of such negligence." It would be very unsafe to adopt any other rule. Every man must so use his own as not to injure the property of another.. (*Broom's Legal Max.* 247.)

III. The referee finds that the plaintiff was not in fault, as a question of fact. He also finds as a question of fact, that the defendant was careless and negligent. Then as a

question of fact, the report cannot be disturbed. For, within the cases above cited, there was evidence properly before the court to show that the defendant was careless and negligent. There was a bad catch on his boat, and he had been navigating the canal with that boat, that season till June, probably nearly two months, and that catch, it was fairly presumable, had shown itself before this, to the plaintiff's horse, fatal event. Then, as a question of law and of fact, the report should not be disturbed.

*By the Court,* MULLIN, J. Negligence is defined to be the omission to do that which ought to be done. In *Webster's Dictionary,* and in *Worcester's,* it has a more general meaning, which is, the habitual omission to do that which ought to be done.

*Jacob,* in his *Law Dictionary,* says, negligence is when a person neglects or omits to do a thing which he is by law obliged to do.

This difference in the definitions is rather in phraseology than idea. By them all, negligence consists in omitting to do what a person ought to do. It is of the essence of negligence that the party charged should have knowledge that there was a duty for him to perform; or he must have omitted to inform himself as to what his duty was, in a given case. Knowledge is presumed, in a great number of cases, and the party will not be permitted to prove that he had not knowledge of his duty.

Every man is presumed to know the law; and hence when the law imposes a duty on a man, it presumes that he knew of it; and it will not permit him to prove that he did not. When the specific duty is not imposed, by either the statute or the common law, the party alleging negligence must show that the accused was cognizant of the duty he is charged with having neglected. It is not necessary that this should be established by direct evidence; it may be, and almost universally is, inferred from the

Sherman *v.* Western Transportation Company.

nature of the duty, or the facts and circumstances of the case.

I am not aware of any statute requiring those navigating boats on the canals to have the bottoms of such boats so made as to permit tow-lines to pass under them without obstruction. But the duty is most obvious the moment a person becomes acquainted with the manner in which boats pass each other in the canal. And the person omitting to keep the bottom of his boat in the condition required to permit the free passage of the tow-line of another boat under her, is responsible for whatever damages naturally and necessarily flow from his neglect.

To perfect this liability, several things must concur :

1st. He must be the owner, lessee or captain of the boat.

2d. The bottom of his boat must be such as not to permit the free passage of the towing line.

3d. He must have known of it before the accident, a sufficient length of time to have enabled him to avoid the injury ; or,

4th. The defect must have continued so long as to satisfy a court or jury that if he had paid proper attention to his boat he must have discovered it.

5th. Damage must have been sustained by reason of the defect.

There is no question made, in this case, but that the defendant is the proper party defendant, if the action can be maintained.

The towing line of the plaintiff's boat was caught on the bottom of the defendant's boat, and damages have been sustained by the plaintiff, by reason of the catching of said line. Three of the four conditions necessary to be proved in order to maintain the suit have been established, in this case, and it only remains to inquire whether the referee was justified in finding the fourth.

When did the catch attach to said boat? There is no

proof that it was put on by the defendant, or any one in its employ. It is not proved that it was on an hour before the accident happened ; nor that it was known to be there by the defendant, or any of its agents, until the moment it occurred.

I admit it was the duty of the defendant to so construct the boat as that towing lines could pass freely under it, and that it should cause examination to be made, from time to time, to see that the bottom continued in such condition. The boat, in passing through a lock, or over a stone or other hard substance in the bottom of the canal, might tear up the planking on the bottom, so as to catch and retain a rope passing along it. The end of a plank might have become loosened and sprung off—a spike or bolt might become loose and be projected beyond the surface of the plank and catch and retain a towing line— and the defect not have existed ten minutes before the accident.

It is not shown, in this case, but that the injury was occasioned in one of the ways suggested, and from a cause originating within the period named.

Nor can we presume that the bottom of this boat was known to the defendant to be in a condition not to allow the free passage of towing lines, for such a length of time as to have made it their duty to put it in proper order. If they had such knowledge, they were guilty of negligence in not putting the boat in good order. But negligence is never presumed. (1 *Cowen & Hill's Notes*, 298, 478.)

In the case of *Olmsted* v. *The Watertown and Rome Railroad Company*, decided at the general term in this district in October, 1855, the plaintiff sued the defendant for damages for negligence in killing his horse. The negligence charged consisted in the company's not maintaining a fence of the requisite height along the side of their road, whereby the horse strayed on to the railroad track and was killed by an engine. The only evidence of a defect in the

Sherman *v.* Western Transportation Company.

fence was that one of the stakes which supported the upper rail was split, and one of the rails had fallen down, so that it was as low as the rail which was next below it, thus leaving the fence, at that point, below the required height of a sufficient fence.  It was further proved that there were marks of the horse's foot on the top of the upper rail, show-ing, as the plaintiff's counsel argued, that the horse had gone over at that place.  It was insisted, on the part of the defendant, that there was no evidence of negligence; that it did not appear that the fence had been defective an instant before the horse passed over; but on the contrary, that the marks of the horse's foot being left on the rail demon-strated that he had struck in passing over, and thus split-ting the stake and letting down the bar.  The court so held, and reversed the judgment of the county court affirm-ing that of the justice, which was in favor of the plaintiff, for the value of the horse.

The principle decided in that case is decisive of this. The defective condition of the bottom of the boat may not have existed sufficiently long to have imposed any duty, in reference to it, on the defendant.  And if its condition was not known, or had not existed long enough to charge the defendant with notice of the defect, it is not guilty of neglect. And there is no evidence in the case from which any such inference can be drawn.

Without stopping to consider whether the defendant's boat having taken the side next the tow-path, thereby ren-dering it necessary for the towing line to pass under her bottom, which it would not have done if she had kept on the heel-path side, where she belonged, had any effect on the question of liability, I am quite clear that no negligence is proved.  The change of place, at the request of the plaintiff, thereby bringing about the accident, cannot in-crease, if it does not lessen, the force of the evidence of negligence.  It is true that if the defendant's boat had been in proper order, the change of place could not have

produced the injury. But we cannot say but that it had some influence in producing it; and if it had, the plaintiff cannot hold the defendant responsible for it.

In any aspect of the case, it seems to me, there is no evidence of negligence, nor any ground on which it can be made liable.

The judgment must therefore be reversed, and a new trial ordered; costs to abide the event.

New trial granted.

[ONONDAGA GENERAL TERM, October 1, 1861. *Mullin, Bacon, Allen* and *Morgan,* Justices.]